GREENVILLE STONE & GRAVEL CO. v. GREENE et al.

(Circuit Court of Appeals, Eighth Circuit.    September 1, 1919.)

No. 5262.

MASTER AND SERVANT ⬅288(5)—ASSUMPTION OF RISK OF DEFECTIVE APPLIANCE
QUESTION FOR JURY.
    In an action for death of an employé, killed by the falling of a boiler
which had been raised on jacks, the questions whether it fell by reason of
a defective jack, and whether deceased had knowledge of the defect and
assumed the risk, *held* properly submitted to the jury under the evidence.

In Error to the District Court of the United States for the Eastern
District of Arkansas; Jacob Trieber, Judge.

Action at law by Lydia A. Greene, administratrix of the estate of
David A. Greene, deceased, and others, against the Greenville Stone
& Gravel Company. Judgment for plaintiffs, and defendant brings
error. Affirmed.

C. L. Marsilliot, of Memphis, Tenn., and Samuel M. Casey, of
Batesville, Ark. (Richard C. Busby, of Memphis, Tenn., and David L.
King, of Hardy, Ark., on the brief), for plaintiff in error.

Lyman F. Reeder, of Batesville, Ark. (John B. McCaleb, of Bates-
ville, Ark., William R. Chesnut, of Commerce, Okl., and Arthur Sul-
livan, of Hardy, Ark., on the brief), for defendants in error.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

CARLAND, Circuit Judge. To reverse a judgment against it in
a personal injury case the gravel company has sued out a writ of error.
On January 18, 1917, David A. Greene was in its employ as steam
shovel fireman, and was engaged with other workmen in moving a
steam boiler back into place after having been repaired. In order to
perform this work, the boiler had been raised by means of ratchet
jacks. While the boiler was in a raised position, it fell or rolled over
and killed Greene. The trial court charged the jury that there were
only two questions of negligence for them to consider, and in so doing
used the following language:

"Whether the jacks which were used for the purpose of moving this boiler
were defective; and whether the defects of these jacks caused the accident."

At the close of all the evidence, counsel for the gravel company
moved the court to direct a verdict in its favor, which motion was
denied. The questions for decision as stated by counsel in this court
are as follows:

(1) There was no evidence that the jacks were defective.
(2) The defects in the jacks, if any, did not cause the injury.
(3) If the jacks were defective, Greene knew this fact and assumed
the risk.

We have carefully read the evidence in the record, and are satisfied
that there was substantial testimony tending to show that the boiler

fell over because the jacks, or one of them, gave way; that a flat piece of iron had been placed in one of the jacks to hold the cogs, so the cogs would hold; this piece of iron was loose; one jack did not hold, and fell; the jack stripped and fell over; the jacks were in bad condition. The witness Oates on direct examination testified for the plaintiff as follows:

"Q. What caused that jack to strip and let the boiler down? A. That jack sets up and down this way (indicating), and there is a ratchet that bolts in here, and a dog fits in here, and there's notches upon this, and that is supposed to fit up tight, but it didn't. I could stick my finger down in there, and that left that loose enough, and that got stuck and went back against that, and that got started, and this dog didn't have but about that much hold (indicating).

"Q. About how much of a hold? A. Well, it wasn't but about a half an inch.

"Q. Had you been familiar with that jack before that time? A. Yes, sir.

"Q. Did you know anything about it being defective at the time they began to use it, or not? A. Yes, sir.

"Q. What condition was it in before? A. It was in bad condition; ready for the junk pile, I would call it."

On cross-examination the witness testified:

"Q. It was a well-known fact that these jacks were in very bad order? A. Yes, sir; every one of the boys around the plant.

"Q. You say all the boys around the plant; had there been any complaint? A. No; everybody around the plant, or anybody knew it that had any dealings with them, knew they were no good."

On redirect examination the witness further testified:

"Q. Had Greene ever handled these jacks, so far as you knew? A. Not to my knowing; he never did handle them; it was not in his line of business. When he was firing, he didn't fool with them.

"Q. You don't know, then, whether Mr. Greene had ever worked with these jacks before in his life? A. No, sir; he hadn't.

"Q. As far as your knowledge is concerned? A. As far as my knowledge, he hadn't."

The general manager of the gravel company on cross-examination testified as follows:

"Q. Now, I want to get this thing so we can get the jury to understand it. When this was raised—when this firebox was raised up here clear, there was nothing to prevent this boiler rolling then, was there? A. Oh, yes; it couldn't roll.

"Q. It couldn't roll? A. No, sir.

"Q. But it did, if it went down. We know it did roll. A. I can't tell how it got down. It must have been in the operation of the jacks."

It was shown that Oates had made statements contrary to his testimony at the trial, and we are asked to disregard his testimony. We are of the opinion that the credibility of the witness Oates and the weight to be given to his evidence was clearly a matter for the jury, and not for this court. There was evidence in our opinion from which the jury might properly find that one of the jacks at least was defective, which caused it to strip, which we gather from the testimony would be the failure of that part of the jack which held the weight of the boiler to remain in place, causing the screw to fall back into the jack frame, and there was also evidence from which

the jury might find that the defective condition of the jack caused the boiler to fail. So far as the question as to whether Greene assumed the risk of the defective jack is concerned, we cannot say it clearly appears that Greene knew of the defective condition, or that it was plainly obvious. It does not appear that Greene was working with the jack that stripped; on the contrary, he was performing other work. The testimony of Oates that everybody knew that the jacks were defective cannot be used to charge Greene with knowledge of the condition of the jacks. The question of assumption of risk was properly left to the jury under a charge that was not excepted to by the defendant.

The trial court did not err in refusing to direct a verdict, and the judgment below must be affirmed; and it is so ordered.